**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MOHAMMED ABDRABBOH,**

                    **Plaintiff(s),**          **CASE NUMBER: 06-11762**
                                      **HONORABLE VICTORIA A. ROBERTS**

**v.**

**CAPITAL ONE BANK, et al.,**

                    **Defendant(s).**
_____/

**ORDER**

**I.      INTRODUCTION**

        This matter is before the Court on Defendants University of Toledo, John Dauer

and Sherri Kasper's Motion to Dismiss.  For the reasons stated below, Defendants'

motion is **GRANTED IN PART** and **DENIED IN PART**.

**II.     BACKGROUND**

        Plaintiff Mohammed Abdrabboh brings this action for injuries he suffered as a

result of negative entries that appear on his credit report.  Plaintiff contends that

Defendants University of Toledo, John Dauer and Sherri Kasper are responsible for

negative entries pertaining to parking tickets.[1]

        To the extent the facts are disputed, the Court presumes the truth of the

_____

        [1]Plaintiff also brings this action against Capital One Bank, ESCI, Marshall Fields
a/k/a May Department Store Company, General Revenue Corporation, Trans Union
Credit Info Company, Equifax and Experian.  General Revenue Corporation, however,
was dismissed by stipulation on July 14, 2006.  The remaining Defendants did not join
this motion.

1

allegations in Plaintiff's affidavit (and, where appropriate, in Plaintiff's complaint). Plaintiff is a graduate of the University of Toledo Law School.  As an alumnus, Plaintiff continues to be involved in fundraising for the University of Toledo and its Law School. Because of his involvement, Plaintiff say the University of Toledo issued him a parking permit to use when he visits the Law School.  However, in the fall of 2005, Plaintiff noticed that the University of Toledo reported a collection to three credit reporting agencies (Experian, Trans Union and Equifax) for an unpaid parking ticket.

Beginning in September 2005, Plaintiff contacted the credit reporting agencies and repeatedly disputed the ticket.  In October 2005, Plaintiff began calling the University of Toledo to dispute the ticket and request that the alleged error be corrected. At the end of October, Plaintiff was directed to Christy Rogers in the Bursar's Office. After several communications via letter, telephone and fax, Ms. Rogers sent Plaintiff a letter agreeing that the ticket did not belong to him and indicating that it would be removed from his credit history.  (Plaintiff says that it was not removed until after this litigation was filed.)  But, she further advised that a second ticket was going to be reported to the credit bureaus.  Plaintiff denied responsibility for the second ticket as well.  Ms. Rogers promised to look into the matter, but advised Plaintiff that she reports or deletes items based on information provided by the University of Toledo Campus Police Department.  Ms. Rogers suggested that Plaintiff contact Defendant Kasper, who is the Event and Parking Enforcement Manager for the University of Toledo Campus Police Department.

Plaintiff contacted Kasper and advised that the license plate to which the ticket was charged was not his license plate.  Plaintiff says Kasper told him that it was the

2

school's policy to place the burden on him to prove that it was not his ticket.  When he told her that the report was destroying his credit, she advised him to pay the ticket. Plaintiff asked to speak with someone else in authority.  Kasper referred Plaintiff to Defendant Dauer, the Chief of the University of Toledo Police Department, and hung up.

Plaintiff says he placed several calls to Dauer which were not returned.  In February 2006, Plaintiff spoke with Ms. Rogers again.  She referred him to Dauer and said that there was nothing she could do since Dauer believed that Plaintiff was responsible.  Plaintiff left additional messages for Dauer and called Kasper again. Plaintiff says that Kasper said that she had already sent him the University's parking policy and that she would not change her mind.  She advised Plaintiff (sarcastically, he says) to file a lawsuit.

The following month, in March 2006, Plaintiff finally reached Dauer.  Plaintiff advised Dauer that his credit history was being destroyed and threatened to bring an action against the University of Toledo.  Per Plaintiff, Dauer said that he "didn't like lawyers anyway" and that, even though he could not prove that the ticket belongs to Plaintiff, he believed that Plaintiff knows the person responsible.  Plaintiff continued to plead with Dauer to look into the matter.  Dauer agreed to do so within a couple of weeks.  Plaintiff protested the additional delay.  Plaintiff asserted that he had already waited several months and said that he would be forced to take legal action because of Dauer's conduct.  Dauer then refused to look into the matter further and advised Plaintiff to "go ahead and sue."

Plaintiff says that the negative reports caused a 100 point drop in his credit

score.  Therefore, he asserts multiple claims against Defendants: Count I--violation of the Fair Credit Reporting Act (15 U.S.C. §1681, *et seq.*) and the Fair Debt Collection Practices Act (15 U.S.C. §1692, *et seq.*); Count II--negligence; Count III--defamation and invasion of privacy, and; Count IV[2]--unfair business practice.  Defendants request dismissal of the claims against them and argue that: 1) the Court lacks subject matter and personal jurisdiction; 2) venue is improper; and 3) Plaintiff failed to state a claim upon which relief can be granted.

## III.   ANALYSIS AND APPLICABLE LAW

### A.   Lack of Subject Matter Jurisdiction

Pursuant to FRCP 12(b)(1), Defendants asserted that subject matter jurisdiction is lacking because: 1) the State of Ohio (and, consequently, the University of Toledo) is not a citizen for purposes of diversity jurisdiction; and 2) the Eleventh Amendment bars suit against agencies of the State of Ohio (*i.e.*, the University of Toledo) and state officials acting within the scope of their authority.

Defendants apparently concede that their first argument lacks merit.  Plaintiff points out (and Defendants do not dispute) that his claim was brought under federal question, not diversity, jurisdiction.  District courts have original "diversity" jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[,]" and is between citizens of different states." 28 U.S.C. §1332(a)(1).  District courts have "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.

---

[2]Count IV is erroneously labeled as Count III as well.

4

§1331.  Because Plaintiff brings a claim under two federal statutes--the Fair Credit
Reporting Act and the Fair Debt Collection Practices Act--there is federal question
jurisdiction.  Therefore, whether the State of Ohio is a citizen within the meaning of the
diversity statute, 28 U.S.C. §1332, is irrelevant to the Court's analysis.

Defendants explicitly concede that their claim of Eleventh Amendment immunity
fails.  "[I]n the absence of consent[,] a suit in which the State or one of its agencies or
departments is named as the defendant is proscribed by the Eleventh Amendment."
*Pennhurst State School & Hospital v Halderman*, 465 U.S. 89, 100 (1984).  However, a
state waives its Eleventh Amendment immunity when it removes a case from state court
to federal court.  *Lapides v Board of Regents of the University System of Georgia*, 535
U.S. 613, 624 (2002)("[R]emoval is a form of voluntary invocation of a federal court's
jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a
matter . . . in a federal forum.").

Since Defendants each consented to Defendant Experian's removal of this action
from Wayne County Circuit Court to this Court, they concede that *Lapides* is controlling.
The University of Toledo waived its Eleventh Amendment immunity.  And, to the extent
Kasper and Dauer were sued in their official capacities, the University of Toledo's
waiver of Eleventh Amendment immunity precludes them from asserting Eleventh
Amendment immunity as well.  *See Kentucky v Graham*, 473 U.S. 159, 167 (1985)("The
only immunities that can be claimed in an official-capacity action are forms of sovereign
immunity that the entity . . . may possess.").

It is unclear whether Kasper and Dauer were sued in their official or individual
capacities.  Kasper and Dauer asserted Eleventh Amendment immunity under the

5

apparent presumption that they were sued in their official capacity.  Plaintiff, however, contends that, although it is not explicitly stated in the body of the complaint, they were sued in their individual capacities.

It is not necessary for the Court to decide the question to resolve this motion. Eleventh Amendment immunity is not available to Kasper and Dauer even if they were sued in their individual capacities.  *Foulks v Ohio Dept. of Rehabilitation and Correction*, 713 F.2d 1229, 1233 (6th Cir. 1983)("The eleventh amendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities.").

For all of these reasons, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

## B.    Lack of Personal Jurisdiction

In a motion to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), the plaintiff bears the burden to establish personal jurisdiction.  *International Tech Consultants, Inc v Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997).  If the court does not conduct an evidentiary hearing, Plaintiff can meet his burden with a prima facie showing.  *Dean v Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir 1998).  The court must view the evidence in the light most favorable to the plaintiff without weighing any disputed assertions of the party seeking dismissal.  *Theunissen v Matthews*, 935 F.2d 1454, 1458 (6th Cir 1991).   However, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id* at 1262.

Defendants Dauer and Kasper, who are Ohio residents, argue that this Court

6

lacks personal jurisdiction over them because neither of them has sufficient minimum contacts with the State of Michigan. Alternatively, they assert that the "fiduciary shield" doctrine precludes the Court from exercising personal jurisdiction over them. Both arguments fail.

### i.    Minimum Contacts

Courts must look to the law of the forum state to determine whether personal jurisdiction exists. *Bird v Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because the Michigan Supreme Court has interpreted Michigan's long-arm statute to extend personal jurisdiction over a non-resident defendant to "the farthest limits permitted by due process, " Michigan's two-part analysis[3] merges so that the only determination is whether assertion of personal jurisdiction violates the due process clause. *Sifers v Horen*, 385 Mich. 195, 199 (1971); *Green v Wilson,* 455 Mich. 342, 350 (1997); *Michigan Coalition of Radioactive Material Users, Inc* v *Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

A plaintiff may assert either general or specific personal jurisdiction. "In a case of general jurisdiction, a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third National Bank in Nashville v WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.

---

[3]Michigan's two-part analysis is: 1) whether plaintiff demonstrated that the exercise of personal jurisdiction is consistent with the requirements of due process under the Fourteenth Amendment, and 2) whether plaintiff has shown that defendant falls within the reach of Michigan's long-arm statutes. *Green v Wilson,* 455 Mich. 342, 346 (1997).

1989).  "In a specific jurisdiction case, 'a State exercises personal jurisdiction over a

defendant in a suit arising out of or related to the defendant's contacts with the forum.'"

*Id.*

Plaintiff asserts that this Court has specific personal jurisdiction over Defendants,

pursuant to M.C.L. §600.705.[4]  The Sixth Circuit developed three criteria for determining

whether specific jurisdiction may constitutionally be exercised over a non-resident

defendant:

> **First**, the defendant must purposefully avail himself of the privilege
> of acting in the forum state or causing a consequence in the forum
> state. **Second**, the cause of action must arise from the defendant's
> activities there. **Finally**, the acts of the defendant or consequences
> caused by the defendant must have a substantial enough connection
> with the forum state to make the exercise of jurisdiction over the
> defendant reasonable.

*LAK, Inc. v Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989)(emphasis

added).  When the first two elements are met, an inference arises that the third element

is also satisfied.  *CompuServe, Inc. v Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996).

However, "failure to meet any one of the three means that personal jurisdiction may not

be invoked."  *LAK*, 885 F.2d at 1303.

---

[4]M.C.L. §600.705 states in relevant part:

The existence of any of the following relationships between an individual or his agent
and the state shall constitute a sufficient basis of jurisdiction to enable a court of record
of this state to exercise limited personal jurisdiction over the individual and to enable the
court to render personal judgments against the individual or his representative arising
out of an act which creates any of the following relationships:

* * *

(2) The doing or causing an act to be done, or consequences to occur, in the state
resulting in an action for tort.

To establish the purposeful availment prong, Plaintiff must show that Defendants had sufficient "minimum contacts" with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v Washington*, 326 U.S. 310, 316 (1945)(quoting *Miliken v Meyer*, 311 U.S. 457, 463 (1940)). The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 474 (1985); *CompuServe, Inc. v Patterson,* 89 F.3d at 1263.

Plaintiff contends that the requisite contacts are established under the "effects test" set forth in *Calder v Jones,* 465 U.S. 783 (1984). In *Calder*, plaintiff was an actress who resided in California. She brought an action in California alleging that she was libeled by an article written and edited by defendants in Florida. The article was published in a national magazine with a large circulation in California. One of the defendants, the editor and president of the magazine, had no relevant contacts with California. The other defendant's only contacts were phone calls to California sources which supplemented his research in Florida, and a call to plaintiff's husband in California to elicit a comment on the article.[5]

The *Calder* Court, nevertheless, found that it was appropriate for the lower court to exercise personal jurisdiction over defendants because they intentionally directed tortious conduct toward the forum state knowing that it would cause harm to a forum resident:

---

[5]It was disputed whether he also traveled to California to research the article. 465 U.S. at 785 n.4.

9

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. **Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.**

465 U.S. at 788-789 (footnote omitted)(emphasis added).

Plaintiff, likewise, contends that Dauer and Kasper directed tortious conduct towards his home state of Michigan when they refused to direct the University of Toledo, via Christy Rogers, to remove the allegedly erroneous ticket from his credit report.  There is support for Plaintiff's claim.  At least two district court's have found personal jurisdiction under analogous circumstances (not cited by either party).

In *Rivera v Bank One*, 145 F.R.D. 614 (D. P. R. 1993), plaintiff was a resident of Puerto Rico who filed an action in the Puerto Rico district court.  He alleged that Bank One tortiously refused to correct false information about a delinquent credit card account that appeared on his credit report.  Plaintiff's ex-wife fraudulently opened the account in his name.  Through telephone calls, a sworn statement and written correspondence with Bank One, Plaintiff: reported the fraud; presented evidence that the signature on the account was not his and that his ex-wife opened the account after their divorce; and, advised Bank One that his credit was being damaged by the incorrect information.  However, Bank One continued to demand payment from plaintiff and refused to correct his credit information.  Letters and attempted telephone calls from Bank One to plaintiff established that it was aware that plaintiff resided in Puerto Rico.  Plaintiff was denied mortgage financing as a result of the erroneous report.

10

Bank One asserted in a motion to dismiss that the court lacked personal jurisdiction over it because it was an Ohio corporation with no ties to Puerto Rico; it only reported account information to agencies in Ohio, California, Georgia and Texas.

In its analysis of the purposeful availment prong, the Court applied the *Calder* "effects test" and found that Bank One's conduct in attempting to collect the debt from plaintiff was sufficient to establish the requisite minimum contacts.  After plaintiff made the initial contact, the *Rivera* Court noted that Bank One voluntarily and purposefully generated contacts with plaintiff in Puerto Rico in an effort to make him answerable for the debt.  And, there was evidence that Bank One failed to correct the credit information even though it knew that its inaction caused injury to plaintiff in Puerto Rico.  Therefore, the *Rivera* Court found that Bank One could reasonably anticipate being haled into court in Puerto Rico to answer for its actions:

> Plaintiff has alleged that Bank One acted tortiously by not correcting the information in his credit profile, knowing that the incorrect information it was providing to credit agencies was causing him damage. The record contains ample evidence of communications between plaintiff and defendant which tend to establish that defendant was aware that its continued refusal to correct plaintiff's credit report was causing plaintiff injury in Puerto Rico. . . . From the allegations in the complaint and the evidence presented by plaintiff, it is apparent that defendant knew that its actions or omissions were causing damages to plaintiff in Puerto Rico and that for more than a year it failed to correct the alleged mistakes. Thus, we are persuaded that once Bank One was in possession of this knowledge and continued to refuse plaintiff's request to correct the mistaken information, it could reasonably anticipate being haled into court here to answer for its actions.

145 F.R.D. at 624-625.

The plaintiff in *Brewer v Transunion, L.L.C.*, --- F.Supp.2d ---, 2006 W.L. 2729198 (S.D. Ala. 2006), was an Alabama resident.  He filed suit in Alabama for injuries arising

11

from erroneous credit reports.  Among others, plaintiff sued the Southern New England Telephone Company ("SNET") which was not a resident of Alabama.      SNET reported to several credit reporting agencies that plaintiff owed a debt for telephone services provided in Connecticut.  However, plaintiff said that he never lived in Connecticut.  He disputed the debt in writing with the credit reporting agencies and SNET.  In his correspondence to SNET, plaintiff requested that the report be corrected and indicated that he was being damaged in Alabama because of SNET's false report.

SNET requested dismissal for lack of personal jurisdiction.  The *Brewer* Court denied SNET's motion.  Citing *Calder* and *Rivera*, the Court applied the "effects test."  It found that SNET's failure to correct plaintiff's credit report was an intentional effort to collect a debt from someone it knew was a resident of Alabama.  And, presuming the truth of plaintiff's allegations, the Court stated that the damages were clearly suffered in Alabama.  Therefore, the Court held that SNET had the necessary minimum contacts with Alabama to justify an exercise of personal jurisdiction over it.

Under the "effects test," Plaintiff Abdrabboh has demonstrated sufficient minimum contacts to establish the first prong of the Court's analysis.  The Court can infer that Dauer and Kasper knew that Plaintiff lives in Michigan.  Kasper allegedly sent him a copy of the University of Toledo parking policy.  Plaintiff claims to have exchanged written correspondence with Christy Rogers, who allegedly consulted with Dauer on the matter.   And, Plaintiff says that he left several telephone messages for Dauer, in which he requested a return call (presumably) in Michigan.

Plaintiff also states in his affidavit that he had telephone conversations with Dauer and Kasper in which he advised them of the alleged credit reporting error,

requested that the error be corrected and advised them that his credit rating was damaged because of the erroneous reports.  Per Plaintiff, Kasper and Dauer refused to remove the ticket even though he told Kasper that the license plate to which the ticket was attributed did not belong to him and Dauer admitted that he could not prove that the ticket belonged to Plaintiff.  As in *Rivera* and *Brewer*, Kasper and Dauer's obstinance can be regarded as an intentional attempt by them to collect the alleged debt from Plaintiff in Michigan, and there is evidence that the effects of their actions in Ohio were felt by Plaintiff in Michigan.

The second and third prongs are also met.  For the second prong, Plaintiff must prove that his claims arise from the defendant's activities in Michigan.   Plaintiff has made this showing.  As discussed above, Plaintiff presented evidence that his claims arise from Dauer and Kasper's attempt to collect an alleged debt from a Michigan resident.

Because the first two prongs are satisfied, the Court presumes that the third prong is satisfied as well.  *CompuServe* at 89 F.3d at 1268 (when the first two prongs are met, an inference arises that the third prong is also satisfied).

Defendants Dauer and Kasper's motion to dismiss for lack of personal jurisdiction is denied.

### ii.    Fiduciary Shield Doctrine

The "fiduciary shield" doctrine provides that "acts performed by a person in his capacity as a corporate fiduciary may not form the predicate for the exercise of jurisdiction over him in his individual capacity."  *Marine Midland Bank, N.A. v Miller*, 664 F.2d 899, 901 (2nd Cir. 1981).  Defendants Dauer and Kasper assert that the fiduciary

13

shield doctrine precludes the Court from exercising personal jurisdiction over them because they acted solely within their capacities as employees of the University of Toledo.

To the extent the fiduciary shield doctrine applies outside of the corporate context, state and federal courts in Michigan have explicitly rejected it.  The Michigan Court of Appeals in *W.H. Froh, Inc. v Domanski*, 252 Mich. App. 220, 237 (2002), stated that, "we explicitly hold that the fiduciary shield doctrine does not constitute a valid argument against a Michigan court's exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan's long arm statute."  Absent an endorsement of the doctrine by Michigan state courts, federal district courts decline to apply it as well.  *See Chicago Blower Corp. v Air Systems Associates, Inc.,* 623 F.Supp. 798, 804 (E.D. Mich. 1985); *McNic Oil & Gas Company v IBEX Resources Company, L.L.C.,* 23 F.Supp.2d 729, 736-737 (E.D. Mich. 1998).

Defendants Dauer and Kasper's motion to dismiss on this ground is denied.

### C.   Venue

Citing the federal venue statue, 28 U.S.C. §1391, the University of Toledo, Dauer and Kasper assert that venue is not proper in this Court since they are all Ohio residents and none of the alleged events occurred in Michigan.  Defendants contend that venue is actually proper in the Northern District of Ohio.  Therefore, they request that the case be transferred to that jurisdiction.

In fact, however, because this case was removed from state court, venue is governed by the removal statute, 28 U.S.C. §1441(a), rather than §1391.  *Kerobo v Southwestern Clean Fuels, Corp. v Southwestern Clean Fuels, Corp.*, 285 F.3d 531,

14

534 (6th Cir. 2001); *Hord v Recchio*, 2006 W.L. 847082, *3 (E.D. Mich. 2006). Under §1441(a), a state court case may only be removed to "the [federal] district and division embracing the place where such [state] action is pending," and federal venue is considered proper in that court. *Id.*

Here, Plaintiff filed his lawsuit in the Wayne County Circuit Court, which lies within the boundaries of the Eastern District of Michigan. Therefore, the action was removed to the only district permitted by §1441(a) and venue is proper. *See Kerobo,* 285 F.3d at 534.

The Court may, nevertheless, transfer the action to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. §1404(a). The Court may transfer an action under §1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Grand Kensington, LLC v Burger King Corp*, 81 F.Supp. 2d 834, 836 (E.D. Mich. 2000).

The threshold question in a decision to transfer an action to another district is whether the case "could have been brought" originally in the transferee district. *Id*; *Roth v Bank of Commonwealth*, 1978 W.L. 1133,*1 (E.D. Mich. 1978). An action could have been brought in the transferee district if: 1) the transferee court has subject matter jurisdiction; 2) venue is proper there; and 3) service of process can be made on the defendants. *Roth*, 1978 W.L. 1133 at 1. A transfer is precluded unless jurisdiction and venue can be established against *all* defendants in the transferee court. *Hoffman v Blaski,* 363 U.S. 335, 343-344 (6th Cir. 1960); *Johnson & Johnson v Piccard,* 282 F.2d

15

386, 388 (1960); *Sunbelt Corp. v Noble, Denton & Assoc., Inc.,* 5 F.3d 28, 33 (3rd Cir.

1993); *Camasso v Dorado Beach Hotel Corp.,* 689 F.Supp. 384, 386 (D. Del. 1988);

*Ferri v United Aircraft Corp.,* 357 F.Supp. 814, 816 (D. Conn. 1973).

Here, Defendants make a cursory request for transfer under §1404(a) without

offering any analysis or evidence on the elements relevant to the Court's decision.

Therefore, Defendants' request is denied since the appropriateness of a transfer to the

Northern District of Ohio cannot be presumed and Defendants failed to provide the

Court with sufficient information to assess their request.

### D.      Fair Credit Reporting Act

Defendants Kasper and Dauer assert that Plaintiff failed to state a Fair Credit

Reporting Act ("FCRA") claim against them.  Therefore, they ask that the Court dismiss

this claim pursuant to FRCP 12(b)(6).

When reviewing a Rule 12(b)(6) motion, the trial court "must construe the

complaint liberally in the plaintiff's favor and accept as true all factual allegations and

permissible inferences therein."  *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.

1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Because a Rule

12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the

function of the court [in ruling on such a motion] to weigh evidence or evaluate the

credibility of the witnesses."  *Miller*, 50 F.3d at 377.  The court should deny a Rule

12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  *Conley v Gibson,* 355

U.S. 41, 45-46 (1957).  *See also Gazette*, 41 F.3d at 1064; *Miller*, 50 F.3d at 377.

"While this standard is decidedly liberal, it requires more than the bare assertion of legal

16

conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *DeLorean*, 991 F.2d at 1240 (citations omitted).

In his complaint, Plaintiff alleges that Kasper and Dauer violated 15 U.S.C. §1681s-2(b) when they willfully and negligently disregarded a letter from the University of Toledo Bursar's office admitting an error. Complaint at ¶¶32, 33. Defendants argue that they are not "users" or "furnishers" of credit information within the meaning of the FCRA. And, in any event, they assert that Plaintiff has not demonstrated that they received the required notice of his dispute to trigger their obligations under §1681s-2(b). Defendant is correct.

The Court first notes that the parties do not cite--nor has the Court found--any authority which clarifies whether Kasper and Dauer are "users" or "furnishers" within the meaning of the FCRA, and the terms are not defined in the statute.

Additionally, courts are split regarding whether there is a private right of action under §1681s-2(b). *Nelson v Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1060 (9th Cir. 2002)(based on the statutory language and legislative history, court found that there is a private right of action under §1681s-2(b)); *Gibbs v SLM Corp.,* 336 F.Supp.2d 1, 11 (D. Mass. 2004)(same); *Stafford v Cross Country Bank*, 262 F.Supp. 2d 776, 783 (W.D. Ky. 2003)(same); *but cf. Carney v Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 502 (W.D. Tenn. 1999)(only a consumer reporting agency can bring a §1681s-2(b) claim); *Zamos II v Asset Acceptance, L.L.C.*, 423 F.Supp. 2d 777, 788 (N.D. Ohio 2006)(same). Many courts, including the Sixth Circuit (in an unpublished opinion), have

17

declined to decide the question. *Downs v Clayton Homes, Inc.,* 88 Fed. Appx. 851, 853
(6th Cir. 2004)(unpub. op.)(assuming, without deciding, that §1681s-2(b) allows a private
right of action); *Zager v Deaton*, 2005 W.L. 2008432, *3 (W.D. Tenn. 2005)(same);
*Young v Equifax Credit Information Services, Inc.,* 294 F.3d 631, 639 (5th Cir.
2002)(declining to decide).

It is not necessary for the Court to decide either question. Regardless of whether
Kasper and Dauer are "users" or "furnishers," Plaintiff failed to allege facts in support of
a §1681s-2(b) violation by them. Section 1681s-2(b) requires furnishers of information
to investigate disputed credit information, but only after receiving notice of the dispute
from a consumer reporting agency:

> ***After receiving notice pursuant to section 1681i(a)(2) of this title
> of a dispute with regard to the completeness or accuracy of any
> information provided by a person to a consumer reporting
> agency, the person shall*--**
>
>> **(A)** conduct an investigation with respect to the disputed
>> information;
>>
>> **(B)** review all relevant information provided by the consumer
>> reporting agency pursuant to section 1681i(a)(2) of this title;
>>
>> **(C)** report the results of the investigation to the consumer
>> reporting agency;
>>
>> **(D)** if the investigation finds that the information is incomplete
>> or inaccurate, report those results to all other consumer
>> reporting agencies to which the person furnished the
>> information and that compile and maintain files on consumers
>> on a nationwide basis; and
>>
>> **(E)** if an item of information disputed by a consumer is found
>> to be inaccurate or incomplete or cannot be verified after any
>> reinvestigation under paragraph (1), for purposes of reporting
>> to a consumer reporting agency only, as appropriate, based
>> on the results of the reinvestigation promptly--
>>
>>> **(i)** modify that item of information;
>>>
>>> **(ii)** delete that item of information; or

18

> **(iii)** permanently block the reporting of that item of information.

15 U.S.C. ¶1681s-2(b)(1)(emphasis added). Within five days of receiving a dispute,

Section 1681i(a)(2) requires consumer reporting agencies to give notification of the

dispute to any person (or entity) who provided the information at issue.

Here, Plaintiff alleges that he filed disputes with the consumer reporting

agencies. *See* Complaint at ¶¶7, 8, 9. He further alleges that the consumer reporting

agencies forwarded his complaints to a number of Defendants, including the University

of Toledo:

> In response to plaintiff's disputes, the consumer reporting agencies,
> Equifax Information Services, Inc., f/k/a Equifax Credit Information
> Services, Inc., Experian Information Solutions, Inc., and Trans Union,
> LLC and its affiliate bureau, each and on each such occasion,
> pursuant to 15 U.S.C. 1681i(a), **forwarded to defendant University
> of Toledo, Capital One Bank, General Revenue Corporation,
> ECIS and Marshal Field's [sic] notification of plaintiff's disputes
> and requested that defendant [sic] conduct a reinvestigation**,
> per 15 U.S.C. 1681s-2.

Complaint at ¶ 11 (emphasis added). Notably, however, Plaintiff does not list Kasper

and Dauer among those whom the consumer reporting agencies notified. *Id.*

Although Plaintiff alleges that Kasper and Dauer had actual knowledge of his

dispute because of his direct contact with them, courts have found that a person's

obligations under §1681s-2(b) are only triggered by notice from a consumer reporting

agency; notice from the consumer is insufficient. *Downs*, 88 Fed. Appx. at 853-854

("[T]he plaintiff must show that the furnisher received notice from a consumer reporting

agency, not the plaintiff, that the credit information is disputed."); *Zager*, 2005 W.L.

2008432 at *5 ("[T]he fact that Defendant had actual notice of the dispute is irrelevant.

A furnisher of incorrect credit information must have received notice from the credit reporting agency in order for subsection (b) duties to be triggered."); *Young*, 294 F.3d at 639 (same); *Stafford*, 262 F.Supp. 2d at 784 (same); *Gibbs,* 336 F.Supp.2d at 11.  And, Plaintiff does not cite any authority which indicates that the notice the University of Toledo allegedly received may be imputed to Kasper and Dauer.  Therefore, Plaintiff failed to allege a FCRA violation against Kasper and Dauer.

For these reasons, the Court grants Kasper and Dauer's motion to dismiss Plaintiff's FCRA claim against them.

## IV.   CONCLUSION

Defendants' Kasper and Dauer's motion to dismiss Plaintiff's FCRA claim in Count I is **GRANTED**.  The remaining grounds upon which Defendants University of Toledo, Kasper and Dauer request dismissal are **DENIED**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 20, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 20, 2006.

s/Linda Vertriest
Deputy Clerk